Christopher D. Jaime (NV SBN 4640)
Donald A. Lattin (NV SBN 0693)
MAUPIN, COX & LEGOY, P.C.
4785 Caughlin Parkway
Reno, Nevada 89519
Telephone: (775) 827-2000
Facsimile: (775) 827-2185
cjaime@mclrenolaw.com
dlattin@mclrenolaw.com
Counsel for Plaintiff

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

IN RE:                                    )
                                          )    Case No. BK-11-52649-BTB
SHENGDATECH, INC.,                        )    Chapter 11
                                          )
        Debtor.                           )
_____            )
                                          )
SHENGDATECH LIQUIDATING                   )    Adversary No. _____
TRUST,                                    )
                                          )    **COMPLAINT**
        Plaintiff,                        )    **[JURY TRIAL DEMANDED]**
                                          )
vs.                                       )
                                          )    Hearing Date: _____
XIANGZHI CHEN, an individual;             )    (Adv. Sched. Conf.)
ANHUI GUO, an individual; ANDREW          )    Hearing Time: _____
CHEN, an individual,                      )    Est. Time for Hearing: _____
                                          )
        Defendants.                       )
_____            )

        Plaintiff ShendaTech Liquidating Trust (the "Liquidating Trust" or "Plaintiff"), by its

undersigned attorneys, alleges the following upon personal knowledge as to itself, and upon

information and belief as to all other matters.  Many of the facts supporting the allegations

contained herein are known only to Defendants (as herein defined) or are exclusively within their

custody and/or control.  Plaintiff believes that further substantial evidentiary support will exist

for the allegations in this Complaint after a reasonable opportunity for discovery.

As and for its causes of action against Defendants Xiangzhi Chen ("X. Chen"), Anhui Guo ("Guo") and Andrew Chen ("A. Chen"), (collectively, unless otherwise noted, "Defendants"), Plaintiff alleges as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) because it is related to a case under Title 11, U.S. Code, namely, In re ShengdaTech, Inc., Case No. BK-11-52649-btb (Bankr. D. Nev. 2012) (the "Bankruptcy Proceeding").

2.    On October 2, 2012, this Court entered an order in the Bankruptcy Proceeding confirming the *First Amended Chapter 11 Plan of Reorganization, as Modified* (the "Plan of Reorganization") of ShengdaTech, Inc., a Nevada corporation ("ShendaTech" or the "Company"). The Plan of Reorganization expressly provides that this Court retains exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Proceeding to the fullest extent permitted by law, including jurisdiction to "hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters."

3.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1409(a) because this action is related to the Bankruptcy Proceeding pending in this Court.

4.    Venue is also appropriate in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and/or 1391(b)(3) because each of the Defendants is subject to personal jurisdiction in this District and is deemed to reside in this District. Each Defendant served as an officer of ShengdaTech, a Nevada corporation. By agreeing to serve as officers of a Nevada corporation,

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

Defendants purposefully established sufficient contacts with the State of Nevada to confer personal jurisdiction over them with respect to claim arising from their service as such and venue over this action in this District.  Plaintiff's claims in this action arise out of Defendants' actions in their capacities as officers of ShengdaTech.

5.    This Adversary Proceeding contains both core and non-core claims.  Plaintiff consents to entry of final orders by the bankruptcy judge.

## II.    INTRODUCTION AND NATURE OF THE ACTION

6.    Defendants are former executive officers of ShengdaTech.

7.    In 2011, ShengdaTech, a company incorporated in Nevada with its principal place of business in the People's Republic of China ("PRC"), spiraled into bankruptcy following the revelation of serious discrepancies in its financial records.

8.    Plaintiff is now in the process of marshaling what few assets remain for distribution to the Company's creditors.

9.    Plaintiff brings this action to, among other things, remedy the Defendants' breaches of their fiduciary duties, waste of corporate assets, exercise of control over corporate assets and funds without proper authorization, and unjustly enriching themselves.

## III.    PARTIES

A.    Plaintiff

10.    Plaintiff is a liquidating trust established pursuant to the Plan of Reorganization which was confirmed by an order ("Confirmation Order") entered by this Court on October 2, 2012.    Plaintiff is empowered and authorized, pursuant to Article 6.2 of the Plan of

Reorganization and the Confirmation Order, to take such actions as are necessary to pursue, prosecute, resolve or compromise, as appropriate, claims and causes of action belonging to ShengdaTech, to the extent those claims have not been released by the Plan of Reorganization. The claims alleged herein have not been released by the Plan of Reorganization or otherwise.

B.    Defendants

11.    Defendant X. Chen was ShengdaTech's President and Chief Executive Officer ("CEO") from March 31, 2006 until August 19, 2011. X. Chen was also ShengdaTech's largest shareholder, owning over 42.25% of ShengdaTech's outstanding shares. X. Chen was ousted from his officer positions at ShengdaTech on August 19, 2011, after he took deliberate steps to thwart an internal investigation into financial improprieties at the Company by a committee formed by ShendaTech's Board consisting of the Company's Audit Committee (the "Special Committee" or "Committee"). Upon information and belief, X. Chen's efforts to obstruct the investigation were intended to hide the fact that he had, for years, been looting the Company by improperly diverting corporate funds to himself and other non-corporate uses.

12.    Defendant Guo was, at all relevant times prior to her resignation on April 29, 2011, ShengdaTech's Chief Operating Officer ("COO"). At all relevant times prior to April 2009, and from September 2010 to April 29, 2011, Guo also served as ShengdaTech's acting Chief Financial Officer ("CFO"). At all relevant times, Guo also held responsibility for all treasury functions at ShengdaTech and its affiliates.

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

4

13.     Defendant A. Chen was ShengdaTech's CFO from April 2009 to September 2010.   During this time, A. Chen worked with the other Defendants in preparing, providing and presenting financial information to the Board.

C.     Non-Parties

14.     Non-party A. Carl Mudd ("Mudd") was a member of ShengdaTech's Board of Directors (the "Board") and an outside director from February 23, 2007 through the effective date of ShengdaTech's Plan of Reorganization.   During the relevant time period, Mudd served as the Chairman of the Board's Audit Committee and of the Special Committee.

15.     Non-party Sheldon Saidman ("Saidman") was a member of ShengdaTech's Board and an outside director from February 23, 2007 though the effective date of ShengdaTech's Plan of Reorganization.   During the relevant time period, Saidman was a member of the Board's Audit Committee and the Special Committee.

16.     Non-party Dongquan Zhang ("Zhang") was a member of ShengdaTech's Board and an outside director from February 23, 2007 until his resignation on October 8, 2011. During the relevant time period, Zhang was a member of the Board's Audit Committee and the Special Committee.

17.     Nonparties Mudd, Saidman, and Zhang are referred to collectively herein as the "Audit Committee" or the "Special Committee."

## IV.    FACTUAL ALLEGATIONS

A.     ShengdaTech and Its Subsidiaries

18.    ShengdaTech was a Nevada corporation with its principal place of business in the PRC.    ShengdaTech manufactured a specialty additive know as nano-precipitated calcium carbonate ("NPCC"), which is widely used in the paint, paper, plastic, and rubber industries to enhance the durability and efficiency of products.

19.    ShengdaTech's manufacturing operations were conducted through several subsidiaries located in the PRC (the "PRC Companies").    The PRC Companies are Shangdong Haize Nanomaterials Co., Ltd., Shangdong Bangsheng Chemical Co., Ltd., Shaanxi Haize Nanomaterials Co., Ltd., Zibo Jiaze Nanomaterials Co., Ltd., and Anhui Yuangzhong Nanomaterials Co., Ltd.

20.    The PRC Companies are 100% owned by Faith Bloom Limited ("Faith Bloom"), a wholly-owned subsidiary of ShengdaTech organized under the laws of the British Virgin Islands.    Faith Bloom is the direct parent of the PRC Companies, and ShengdaTech is the direct parent of Faith Bloom.    Faith Bloom formed ShengdaTech in 2006 through a reverse merger with a United States shell company, Zeolite Exploration Company.    ShengdaTech went public in late March 2006 and its stock began trading on NASDAQ in early 2007.

21.    ShengdaTech and its affiliates reported strong earnings in 2007, 2008, 2009 and 2010 and ShengdaTech's auditors reported no issues.    Notwithstanding these strong earnings and clean audits, the Audit Committee questioned ShengdaTech's auditors about their audit practices and instructed them to conduct additional fact checking for the 2010 year end audit, without informing X. Chen or Guo.

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

22.    Based on the Audit Committee's initiative, as discussed below, the Audit Committee discovered that in order to cover up the Defendants' diversion of corporate assets, numerous internal financial statements and reports prepared by the Defendants for the Board in 2007, 2008, 2009, 2010 and 2011 provided inaccurate information about ShengdaTech, its resources, cash reserves, assets and overall financial health.

B.    The De-Listing of ShengdaTech Stock From NASDAQ and Related Obstruction of the Special Committee by X. Chen and Guo

23.    Based on audits, reviews and unqualified audit opinions of its independent auditors and based on internal financial information prepared by the Defendants for the Board, the Audit Committee believed the 2007, 2008 and 2009 financial statements and the 2008, 2009 and 2010 quarterly financial statements (collectively, the "Financial Statements") to be correct. The Board relied on the Financial Statements when overseeing the management of the Company, and caused ShengdaTech to publish the Financial Statements in numerous SEC filings and securities offering documents.

24.    On or about March 2, 2011, after being instructed by the Audit Committee to conduct additional fact checking in connection with the 2010 year end audit, KPMG HK, the Company's auditor, informed the Board's Audit Committee that KPMG HK had uncovered "potentially serious discrepancies and unexplained issues relating to the [Company's] financial records" during the course of its audit of the Company's 2010 Financial Statements.

25.    In response, ShengdaTech's Board promptly formed the Special Committee to investigate these issues.

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

26.    In response to concerns regarding the Company's bank account balances, the Special Committee quickly sought to implement a Cash Control Plan, under which all of the Company's cash assets would be transferred into accounts over which the Audit Committee would have signature authority. The Special Committee experienced trouble implementing the Cash Control Plan when the PRC Subsidiaries' banks indicated that this process would require the cooperation and authorization of ShengdaTech's management – namely, X. Chen. Despite opposition from X. Chen, Special Committee members Zhang and Mudd were eventually named signatories under the Cash Control Plan. However, X. Chen transferred *only $14.15 million* – a far cry from the $110 plus million in cash that ShengdaTech had consistently reported in its Financial Statements – from the PRC Subsidiaries' and Faith Bloom's accounts into the Cash Control Account.

27.    When questioned by the Special Committee about the location of the remaining funds, X. Chen claimed that certain of the Company's cash was tied up in certificates of deposit ("CDs") and that he was in the process of negotiating their liquidation. While X. Chen provided the Special Committee with photocopies of what purported to be $65 million worth of CDs, the Special Committee was unable to verify the authenticity of these CDs and X. Chen was unresponsive to requests for further information. The Special Committee subsequently learned that the bank which purportedly issued the CDs was unable to verify them and, in fact, had no record of issuing them to the ShengdaTech subsidiary (Faith Bloom) that reportedly held them. The precise fate of the rest of Company's funds is still unknown, but it was not used for any purpose benefiting ShengdaTech.

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

28.     On April 19, 2011, KPMG HK informed the Company that ShengdaTech's senior management had not taken timely and appropriate remedial action with respect to the discrepancies and issues that KPMG HK had identified in the course of its 2010 audit.

29.     On April 20, 2011, the NASDAQ Listing Qualifications Department informed the Company by letter that its shares would be delisted.  Among the reasons cited were "public interest concerns … raised by the serious accounting and operational issues uncovered by KPMG" HK and "the deliberate and ongoing efforts of the Company's Chief Executive Officer and Acting Chief Financial Officer, Mr. Xiang Zhi Chen and Ms. Anhui Guo, respectively, to obstruct an internal investigation into these matters."

30.     On April 29, 2011, KPMG HK informed the Audit Committee that it was resigning as the Company's independent accountant effective immediately.  In a letter of the same date confirming its resignation, KPMG HK stated that "[t]he manner of management's conduct during the investigation by [the Special Committee] raises doubts about management's representations provided to [KPMG HK] in connection with [its] 2008 and 2009 audits of the consolidated financial statements and the effectiveness of internal control over financial reporting of the Company."  KPMG HK's April 29 letter also stated that "disclosures should be made and action should be taken to prevent future reliance on [KPMG HK's] previously issued audit reports related to the consolidated balance sheets of ShengdaTech, Inc. and its subsidiaries as of December 31, 2008 and 2009, and the related consolidated statements of income, shareholders' equity and comprehensive income, and cash flows for the years then ended and

9

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

the effectiveness of internal control over financial reporting as of December 31, 2008 and 2009."

31.    On May 5, 2011, the Board caused ShengdaTech to file a Form 8-K and issued a press release disclosing KPMG HK's resignation and warning investors against continued reliance upon KPMG HK's audit reports on the 2008 and 2009 Financial Statements. The Form 8-K also noted that KPMG HK's concerns regarding ShengdaTech's financial statements included serious discrepancies and unexplained issues relating to, among others, the Company's bank balances.

32.    On June 8, 2011, the NASDAQ Listing Qualifications Panel affirmed its decision to delist ShengdaTech's common stock. Trading in the stock was suspended on June 10, 2011.

33.    In June 2011, the Company defaulted on approximately $150 million of notes that had been issued to investors in 2008 and 2010.

34.    On August 11, 2011, the SEC initiated a regulatory proceeding titled In re ShengdaTech, Inc. (LA-3397). The formal Order entered by the SEC in connection with this proceeding (the "SEC Order") raised potential violations of the federal securities laws arising from, inter alia, false statements in the Financial Statements that ShengdaTech had filed with the SEC.

35.    Given the Company's defaults, the suspension of trading in the stock and the pending delisting, the SEC action, and various lawsuits which had been initiating against the Company by securities holders, the Special Committee knew that to protect the Company, its creditors and shareholders, it needed not only to complete its investigation but also to file for

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

bankruptcy protection. Rather than act in the best interests of the Company, X. Chen began to take actions to block Board action and attempted to put one of his cohorts on the Board so that X. Chen would control the Board and be in a position to further impede the investigation of the Special Committee.

36.    On August 19, 2011, the Special Committee used its power to cause ShengdaTech to file for bankruptcy protection in the Bankruptcy Court. That same day, the Special Committee announced that it had removed all members of ShengdaTech's management – including X. Chen – from their positions, effective immediately. It also filed for injunctive relief to prevent X. Chen from interfering with the work of the Special Committee or attempting to alter the Board, which at that point consisted solely of the members of the Special Committee and X. Chen. The Bankruptcy Court granted this injunctive relief and placed all power to govern ShengdaTech into the hands of Mudd, Saidman and the Company's newly appointed Chief Restructuring Officer.

37.    Nevertheless, X. Chen and Guo continued to use their control of ShengdaTech's assets for their own use and to the detriment of the Company, as later uncovered by the Special Committee.

38.    On August 22, 2011, the SEC enforcement staff served ShengdaTech with a subpoena pursuant to the SEC Order. The subpoena was broad and requested the production of a myriad of documents relating to the Company's finances, taxes, bank accounts, financial statements, internal auditing, and professional services rendered in connection therewith, as well as the hiring, firing and compensation of the Company's officers and directors. The Company,

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

acting through the Special Committee, cooperated and exchanged information with the SEC enforcement staff.

39.    On December 15, 2011, NASDAQ officially delisted ShengdaTech. The stock had not traded on NASDAQ since its June 10, 2011 suspension.

C.    The Results of The Special Committee Investigation

40.    Through its investigation, which concluded as of the effective date of the Plan of Reorganization, the Special Committee learned that the Company's true financial condition was far different from the Financial Statements and far different from what the Defendants had led the Audit Committee to believe at the time. Cash that was reported to exist in Faith Bloom's and the PRC Subsidiaries' bank accounts had been siphoned off by the Company's Chief Executive Officer, Defendant X. Chen, and his cohorts, the other Defendants, for non-corporate purposes. [2]

41.    The Special Committee investigation also revealed that unbeknownst to the independent members of the Board, Defendants had duped the Board into authorizing and approving the 2010 debt offering so that Defendants could continue to deplete corporate funds and cover up their past misdeeds.

1.    Failure to Accurately Report Balances and Cash Reserves

42.    As a result of Defendants' actions, Defendants' reported cash balances and reserves to the Board were materially inflated between at least 2007 and 2011.

---

[2] Only persons who controlled the PRC Subsidiaries' chops had the ability to move money from the PRC Subsidiaries' bank accounts. X. Chen (or persons under his supervision) controlled the PRC Subsidiaries' chops and Faith Bloom's bank accounts.

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

Case 13-05047-btb    Doc 1    Entered 08/19/13 16:44:28    Page 13 of 24

43.    Defendants reported to ShengdaTech and its Board the following cash balances purportedly held at Agricultural Bank of China - Qianzian Branch: RMB 553,062,048.33 as of December 31, 2010; RMB 333,829,789.97 as of December 31, 2009; and RMB 120,209,720.38 as of December 31, 2008. When KPMG HK attempted to confirm these balances in March 2011 (after a member of the Audit Committee requested that KPMG HK make such inquiries), it was informed that these balances were "not possible" because the aggregate amount of all funds on deposit at the bank was only RMB 200,000,000.00. KPMG HK was subsequently unable to confirm the true amount of the funds on deposit at this bank because Defendants refused to cause the payment of the RMB 200 bank charge for the confirmation.

44.    Defendants similarly reported to ShengdaTech and its Board a cash balance that included the following balances purportedly held at the Bank of China - Tai'an Branch: RMB 13,282,581.88 as of December 31, 2008; RMB 12,307,398.87 as of December 31, 2009; and RMB 249,098.78 as of December 31, 2008. When KPMG HK contacted the bank in March 2011 (as a result of procedures requested by the Audit Committee) to confirm these balances, the bank informed KPMG HK that the true amount on deposit as of December 31, 2010 was only RMB 89,949.48.

45.    Based on the Special Committee's investigation, ShengdaTech's true cash condition was materially different from what was reported by Defendants to ShengdaTech and its Board and ultimately included in ShengdaTech's filings with the SEC. For example, although ShengdaTech reported cash of approximately USD $114 million as of December 31, 2008, between it, Faith Bloom, and the PRC Companies it actually had only approximately USD $68

13

IAUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

million in cash on deposit as of that date.  The overstatement as to the PRC Companies for this year was especially inflated.  While it was reported by Defendants that the PRC Companies held approximately USD $56 million in cash, in reality they only had a total of approximately USD $10.47 million in cash.

46.    The amount Defendants reported to ShengdaTech and its Board for its reported cash position as of December 31, 2009 was likewise misstated.  While Defendants reported that it had approximately USD $115 million as of December 31, 2009, as between it, Faith Bloom, and the PRC Companies it had only approximately USD $35 million on deposit as of that date. While the PRC Companies reportedly had a total of approximately USD $83 million on deposit (of the reported USD $115 million), in reality these companies only had a total of approximately USD $2.77 million on deposit.

47.    Similarly, when the Special Committee contacted the bank that purportedly issued multi-million dollars worth of certificates of deposit to Faith Bloom, it discovered that the bank had no record of any such certificates of deposit ever being issued to Faith Bloom.  With respect to this matter, the representation that the certificates of deposit were valid and issued in the amounts stated was made by X. Chen and was, therefore, known by him to be fraudulent when presented to the SEC in an effort to satisfy the SEC in ShengdaTech's delisting proceedings referenced *infra*.

48.    Other instances in which the Special Committed discovered that the Defendants caused or allowed ShengdaTech to make or release false statements of cash reserves to the SEC, investors, and the public include the following:

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

(1)    on or about June 30, 2008, ShengdaTech reported a Q2 2008 cash balance of USD $138 million;

(2)    on September 30, 2008, ShengdaTech reported a Q3 2008 cash balance of USD $132 million;

(3)    on March 31, 2009, ShengdaTech reported a Q1 2009 consolidated cash of USD $114 million;

(4)    on June 30, 2009, ShengdaTech reported a Q2 2009 consolidated cash balance of USD $111 million;

(5)    on September 30, 2009, ShengdaTech reported a Q3 2009 consolidated cash balance of USD $105 million;

(6)    on March 22, 2010, ShengdaTech reported a Q1 2010 consolidated cash balance of USD $117 million;.

(7)    on June 30, 2010, ShengdaTech reported a Q2 2010 consolidated cash balance of USD $110.6 million;

(8)    on September 30, 2010, ShengdaTech reported a Q3 2010 consolidated cash balance of USD $120.65 million;

(9)    on December 31, 2010, ShengdaTech reported consolidated cash for the PRC Subsidiaries' bank accounts totaled USD $105.9 million. Actual bank statements subsequently obtained by the Special Committee for all material accounts, however, showed only USD $1.38 million as of this date;

(10)    on February 28, 2011, ShengdaTech reported consolidated cash for PRC Subsidiaries' bank accounts totaled USD $111.3 million. Actual bank statements subsequently obtained by the Special Committee for all material accounts, however, showed only USD $1.28 million as of this date; and

(11)    on April 30, 2011, ShengdaTech reported consolidated cash for PRC Subsidiaries' bank accounts reported at USD $116.5 million. Actual bank statements obtained by the Special Committee for all material accounts, however, show only USD $2.01 million as of this date.

49.    Based on the information Defendants provided to cover up their diversion, conversion, waste and misuse of corporate assets, ShengdaTech's public disclosure of reported cash balances were false and caused ShengdaTech and its creditors to suffer extreme harm.

2.    Diversion and Wasting of Corporate Funds

50.    In addition to false statements concerning ShengdaTech's cash balances, cash reserves, and overall financial condition, upon information and belief, Defendants were responsible for questionable and unauthorized debits from the PRC Companies' accounts which resulted in the diversion, misappropriation or conversion of corporate funds.  Based upon the Special Committee's investigation, these include the following:

(1)    a debit of USD $876,663 out of a Shangdong Bangsheng account in May of 2008;

(2)    a debit of USD $153,845 from a Shangdong Haize account in June 2008;

(3)    a debit of USD $14,944,797 from a Zibo account and a debit of USD $307,692 from a Shangdong Bangsheng account in July 2008;

(4)    a debit of USD $16,513,166 from a Zibo account and a debit of USD $307,692 from a Shandong Bangsheng account in August 2008;

(5)    a debit of USD $2,298,687 from a Zibo account and a debit of USD $651,688 from a Shangdong Bangsheng account in September 2008;

(6)    a debit of USD $10,107,501 from a Zibo account in October 2008;

(7)    a debit of USD $7,997,469 from a Zibo account and a debit of USD $1,061,538 from a Shandong Haize account in November 2008;

(8)    a debit of USD $10,186,453 from a Zibo account, a debit of USD $153,846 from a Shandong Haize account, and a debit of USD $2,231,769 from a Shaanxi Haize account in December 2008;

(9)    a debit of USD $211,077 from a Zibo account in February 2009;

IAUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

(10)   a debt of USD $4,169,231 from a Zibo account in March 2009;

(11)   a debit of USD $10,706,823 from a Zibo account in April 2009;

(12)   a debit of over USD $38,911,000 from a Zibo account and a debit of USD $631,947 from a Shangdong Haize account in May 2009;

(13)   a debit of over USD $31,000,000 from a Zibo account in June 2009;

(14)   a debit of over USD $19,000,000 from a Zibo account in July 2009;

(15)   a debit of USD $19,448,000 from a Zibo account and a debit of USD $2,077,000 from a Shangdong Haize account in August 2009;

(16)   a debit of over USD $8,530,000 from a Zibo account in September 2009;

(17)   a debit of USD $5,590,000 from a Zibo account and a debit of USD $1,538,000 from a Shangdong Haize account in October 2009;

(18)   a debit of USD $9,284,000 from a Shangdong Haize account and a debit of USD $9,560,000 from a Shangdong Bangsheng account in November 2009; and

(19)   a debit of USD $19,300,000 from an Anhui account, a debit of USD $4,130,000 from a Shaanxi Haize account, USD $1,230,000 from a Shandong Haize account, and a debit of USD $17,526,665 from a Zibo account in May 2010;

51.   To date, Plaintiff has been unable to completely identify (a) any payee information associated with each of the foregoing debits and (b) the purpose for which the debited funds were used. Plaintiff is informed and believes, and on that basis alleges, that the debited funds are or at some time were in the personal and unauthorized possession, custody, or control of Defendants X. Chen and Guo. Plaintiff is further informed and believes, and on that basis alleges, that following some or all of the aforementioned debits the funds were diverted to Hong Kong money changers after which the funds disappeared.

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

17

<u>3   Materially False Financial Information and Statements Related to the
Need for the 2010 6.5% Debt Offering and the Offering Itself</u>

52.    In addition to the Defendants' disclosure of false statements and material misrepresentations and omissions regarding ShengdaTech's cash balances and reserves in order to conceal their depletion of corporate funds, the Defendants also deceived the Board into authorizing and approving a 2010 offering of 6.5% notes.

53.    On December 9, 2010, the Company announced its intention to offer an aggregate of USD $90 million of senior convertible notes due 2015 in a private offering.  On the following day, the Company increased the offering to USD $130 million in aggregate principal amount of 6.50% Senior Convertible Notes due 2015.  The debt offering, which, upon information and belief, was approved by the Board based on false information provided by Defendants as to the need to raise funds, took place on December 14, 2010, raising net proceeds of USD $123.5 million for the Company.

54.    Responding to inquiries by members of the Audit Committee, Defendants X. Chen and Guo vigorously defended X. Chen's recommendation to conduct the offering despite the large cash reserves that were reported and that appeared on the Company's balance sheets.  X. Chen explained that although ShengdaTech purportedly held approximately USD $121 million in cash, $98 million of that cash position was held in RMB (Chinese currency) in Chinese banks. X. Chen went on to explain that "it is cost prohibitive for the Company to convert the RMB cash balance into [US dollars]" and that the Company required significant monies in USD to cover its current and very near term obligations.  It now appears that ShengdaTech did not have the cash

IAUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

reserves it purported to have at that time and that X. Chen's explanation for why the money was needed was a ruse to conceal that Defendants had been diverting Company funds.

55.    In particular, Defendants X. Chen and Guo reported to the Audit Committee that ShengdaTech was obligated to pay expansion costs of approximately USD $60 million to the PRC government(s) to secure government contracts and used the purported need for these funds as a basis for justifying the 2010 6.5% debt offering.  This rationale provided by Defendants proved to be untrue because, according to statements later made by Defendant Guo herself, only USD $11 million ultimately was necessary and used for that contractual purpose as required by the PRC government(s).

56.    X. Chen was consistent with his statements to the Audit Committee when responding to inquiries by concerned shareholders.  Defendant X. Chen issued a "Q&A" through a Form 8-K filing with the SEC on December 17, 2010, in which he attempted to defend the decision to conduct the offering despite the large cash reserves that were reported on the Company's balance sheets. X. Chen explained that although ShengdaTech purportedly held approximately USD $121 million in cash, $98 million of that cash position was held in RMB (Chinese currency) in Chinese banks.  X. Chen went on to explain that "it is cost prohibitive for the Company to convert the RMB cash balance into [US dollars]."   Again, given the discrepancies later found in the financial information Defendants reported to the Board and their conversion, and depletion of corporate assets for non-corporate purposes, it appears that Defendants recommended and pushed through the corporate raise for their own benefit, not the benefit of ShengdaTech.

57.    As a result of Defendants' actions, when ShengdaTech became obligated to pay interest on the 6.5% Notes, which Defendants duped the Board of ShengdaTech into authorizing, ShengdaTech defaulted and spiraled into bankruptcy.

### FIRST CLAIM FOR RELIEF
### (Breach of Fiduciary Duties - All Defendants)

58.    Plaintiff incorporates all prior allegations as if the same were set forth herein in their entirety.

59.    The Defendants, because of their positions of control and authority as officers of ShengdaTech, were able to and did directly and/or indirectly exercise control over the wrongful acts complained of hereinabove.

60.    By reason of their positions as officers of ShengdaTech and because of their ability to control ShengdaTech's business and corporate affairs, the Defendants each owed ShengdaTech, its creditors and shareholders the fiduciary obligations of good faith, trust, loyalty, and candor and were required to use their utmost ability to control and manage ShengdaTech in a fair, just, honest and equitable manner.

61.    The Defendants were also required to act in furtherance of the best interests of ShengdaTech, its creditors and shareholders and not in furtherance of their own interests or benefit.

62.    Each Defendant further owed ShengdaTech, its creditors and shareholders the fiduciary duty to exercise good faith and diligence in the administration of ShengdaTech's affairs, the use and preservation of its property and assets, and the highest obligations of fair dealing.

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

20

63.    The Defendants knowingly breached their fiduciary duties of good faith, trust, loyalty, and candor by improperly diverting Company funds to non-corporate purposes and then concealing these defalcations by presenting Financial Statements to the Company's Board, shareholders, and creditors that overstated ShengdaTech's cash reserves and financial condition.

64.    When the Audit Committee and ultimately the Special Committee confronted X. Chen and Guo with respect to these issues, X. Chen and Guo intentionally impeded any inquiries into those discrepancies, in violation of their fiduciary duties of good faith, loyalty, trust, and candor.

65.    Defendants' pattern of conduct as described hereinabove resulted in repeated and continued breaches of their fiduciary duties of loyalty, good faith, and candor towards ShengdaTech and resulted in Defendants' receipt of numerous improper benefits.

66.    As a direct and proximate result of the Defendants' misconduct and the breach by the Defendants of their fiduciary duties, all as alleged herein, ShengdaTech sustained damage substantially in excess of $75,000 and in an amount to be proved at trial.

67.    Plaintiff has incurred attorney's fees and costs as a result of the Defendants' conduct alleged herein and is entitled to recover the same.

### SECOND CLAIM FOR RELIEF
#### (Waste of Corporate Assets – All Defendants)

68.    Plaintiff incorporates all prior allegations as if the same were set forth herein in their entirety.

69.    Defendants caused ShengdaTech to expend corporate assets in furtherance of the 2010 6.5% debt offering, which would not have been necessary if representations regarding

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

ShengdaTech's financial condition and cash reserves were accurate and if Defendants had not diverted the Company assets for non-corporate uses. Defendants caused these corporate assets to be expended on the debt offering in order to conceal and perpetrate Defendants diversion of corporate assets to non-corporate purposes.

70.    As a direct and proximate result of this waste of corporate assets, ShengdaTech has sustained and will continue to sustain damages substantially in excess of $75,000 and in an amount to be proved at trial.

71.    Plaintiff has incurred attorney's fees and costs as a result of the Defendants' conduct alleged herein and is entitled to recover the same.

**THIRD CLAIM FOR RELIEF**
**(Conversion – All Defendants)**

72.    Plaintiff incorporates all prior allegations as if the same were set forth herein in their entirety.

73.    ShengdaTech had a right, title, and/or interest in and to funds in the PRC Companies' accounts identified hereinabove.

74.    Through one or more of the questionable and/or unauthorized debits identified hereinabove, the Defendants, either individually or collectively, exerted a distinct act of dominion or control over those corporate funds by removing funds from those accounts for personal or other unauthorized uses.

75.    Defendants' acts of exerting exercise and control over corporate funds through the aforementioned questionable and unauthorized debits was in denial of and inconsistent with ShengdaTech's right, title and/or interest in those funds.

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

76.     As a direct and proximate result of the Defendants' actions in debiting the accounts referenced hereinabove without proper authorization, ShengdaTech has been damaged in an amount in excess of $75,000 and in an amount to be proved at trial.

77.     Plaintiff has incurred attorney's fees and costs as a result of the Defendants' conduct alleged herein and is entitled to recover the same.

### FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment – All Defendants)

78.     Plaintiff incorporates all prior allegations as if the same were set forth herein in their entirety.

79.     By the actions described herein, and in particular through the questionable and unauthorized debits alleged hereinabove, Defendants obtained and retained benefits they otherwise were not entitled or authorized to receive and retain.

80.     Defendants would be unjustly enriched if they were permitted to retain those benefits, particularly corporate funds that belonged to ShengdaTech and the PRC Companies, which should be and could have been used for appropriate and legitimate corporate purposes.

81.     Plaintiff is entitled to reimbursement for the financial gain improperly obtained and retained by the Defendants as alleged hereinabove.

82.     As a direct and proximate result of the Defendants' actions alleged hereinabove Plaintiff has been damaged in an amount in excess of $75,000 and in an amount to be proved at trial.

83.     Plaintiff has incurred attorney's fees and costs as a result of the Defendants' conduct alleged herein and is entitled to recover the same.

WHEREFORE, based on the foregoing, Plaintiff requests the following relief:

A.     For compensatory, general, and special damages in excess of $75,000 and in an amount to be determined at trial against all Defendants, jointly and severally, together with prejudgment interest to the maximum rate allowed by law;

B.     Awarding Plaintiff the cost of this action, including reasonable attorney's fees, accountant fees, expert fees, and other disbursements;

C.     For such other relief the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED this 19th day of August, 2013.

MAUPIN, COX & LeGOY

By  _/s/ Christopher D. Jaime_
    Christopher D. Jaime, Esq., #4640
    Donald A. Lattin, Esq., #0693
    Attorneys for Plaintiff